**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ZLATAN WAD ERNESTO DELMYR,<br><br>Petitioner,<br>v.<br><br>ANTONE MONIZ, Superintendent of Plymouth County Correctional Facility, DAVID T. WESLING, Acting Boston Field Office Director, U.S. Immigrations and Customs Enforcement, DAVID VENTURELLA, Acting Director, U.S. Immigrations and Customs Enforcement, MARKWAYNE MULLIN, U.S. Secretary of Homeland Security, and TODD BLANCHE, Acting U.S. Attorney General,<br><br>Respondents. | ) | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Agency Number: 234-960-625 |

## INTRODUCTION

1. Petitioner Zlatan Wad Ernesto Delmyr ("Petitioner" or "Zlatan") submits this Petition for Writ of Habeas Corpus to remedy his unlawful detention.

2. Zlatan is a 19-year-old young man who lawfully entered the United States from Haiti in 2020, when he was 12 years old, on a B-2 visitor's visa. He had been sent here for protection because his life had been threatened due to his father's work as a police officer. He applied for Temporary Protected Status, asylum, withholding of removal, and protection under the Convention Against Torture, and his father, who is currently a lawful permanent resident but imminently eligible to become a US citizen, has submitted a I-130 petition so that his son can obtain a green card. Zlatan has never been convicted of a crime.

3. Zlatan's family members are in the United States including both of his parents, aunts, uncles, cousins, siblings, and grandparents. Zlatan has no immediate family members in Haiti.

4. Zlatan graduated from high school in Malden, MA in 2025 when he was 17 years old. On January 19, 2026, Zaltan was placed in ICE custody at the Plymouth County Correctional Facility in Plymouth, MA. He turned 19 years old one month ago while in custody.

5. On May 1, 2026, despite Zaltan's strong fear-based claim for protection, Immigration Judge Luciana Dubuc of the Chelmsford Immigration Court denied Zaltan's claims for relief and ordered him removed to Haiti. Zlatan, through legal counsel, filed a timely appeal of the decision with the Board of Immigration Appeals where the appeal remains pending.

6. On August 6, 2026, Zlatan was denied bond by Immigration Judge Kathryn Frames ("IJ") based on flight risk, in violation of his due process rights and the legal standards set forth by the First Circuit. A true and correct copy of the IJ's Order is attached hereto as Exhibit 1. In denying bond, the IJ concluded that Zlatan "is a flight risk by a preponderance of the evidence and there is no bond amount or alternative to detention that would ameliorate his risk of flight." *Id.*

7. Zlatan's bond hearing did not comply with *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021) or due process requirements for three reasons. First, the IJ did not properly allocate burdens of proof in compliance with *Hernandez-Lara*, and the government failed to satisfy its burden by proving by a preponderance of the evidence that Zlatan is a flight risk that no amount of bond or alternative to detention could ameliorate. Second, the IJ's exercise of discretion in denying bond was arbitrary and capricious such that it violated due process. Third, the IJ failed to consider alternatives to detention in her flight risk analysis.

8. As such, Zlatan submits this Petition to ask the Court to remedy his unlawful detention and grant his immediate release.[1]

**REQUIREMENTS OF 28 U.S.C. § 2243 FOR PROMPT PROCESS**

9. A court must grant the petition for writ of habeas corpus or issue an order to show cause to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

**VENUE**

10. Venue is proper in this District because Petitioner is currently held in Plymouth, Massachusetts. Further, venue is proper because Respondents are officers and employees of the United States and no real property is at issue. 28 U.S.C. § 1391(e).

**PARTIES**

11. Petitioner Zlatan Wad Ernesto Delmyr is currently detained at the Plymouth County Correctional Facility in Plymouth, MA. He has been in the United States for approximately six years having come to the United States from Haiti at age 12 to be protected from harm. Petitioner is a native and citizen of Haiti, and he was lawfully admitted to the United States on a visitor's visa on July 18, 2020. He has remained in the United States ever since

[1] Other sessions of this Court have found that immediate release of the petitioner is the appropriate remedy where similar due process violations were implicated. *Loja Loja v. Moniz*, No. 11826-MJJ, Doc. No. 10 at 6 (D. Mass. April 28, 2026) (finding that ordering a new bond hearing would be futile where the petitioner had already been denied bond without due process); *Mijango Velasco v. Wesling*, No. 26-11355-LTS, Doc. No. 19 (D. Mass. April 24, 2026) (ordering immediate release); *Li v. Wesling*, 1:26-cv-11601-BEM, Doc. No. 10 (D. Mass April 9, 2026) (same); *Miti v. Moniz*, No. 26-11327-BEM, 2026 WL 884639 (D. Mass. Mar. 31, 2026) (same); *Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 (D.R.I. Dec. 3, 2025) (same); *I.G.S. v. Nessinger*, No. 25-cv-339-MRD-PAS, slip op. at 2-4 (D.R.I. Sept. 12, 2025) (same).

working and awaiting adjudication of his asylum application. Zlatan was arrested by Immigration and Customs Enforcement ("ICE") on or about January 19, 2026 and he has been in ICE custody since that date. On May 1, 2026, Immigration Judge Luciana Dubuc at the Chelmsford Immigration Court ordered Zlatan removed to Haiti. He timely appealed the decision; the appeal is pending. On August 6, 2026, Immigration Judge Kathryn Frames at the Chelmsford Immigration Court denied Petitioner's request for bond, finding that he is "a flight risk by a preponderance of the evidence and there is no bond amount that would mitigate his risk of flight." *See* Ex. 1.

12. Respondent Antone Moniz is the Superintendent of the Plymouth County Correctional Facility. He is the physical custodian of Zlatan and is named in his official capacity.

13. Respondent David T. Wesling is the Acting New England Field Office Director for ICE. He is a legal and physical custodian of Zlatan and is named in his official capacity.

14. Respondent David Venturelli is the Acting Director of ICE. He is a legal custodian of Zlatan and is named in his official capacity.

15. Respondent Markwayne Mullin is the U.S. Secretary of Homeland Security. He is a legal custodian of Zlatan and is named in his official capacity.

16. Respondent Todd Blanche is the Acting Attorney General of the United States. He is a legal custodian of Zlatan and is named in his official capacity.

## FACTUAL AND PROCEDURAL HISTORY

### *Zlatan's Life in the United States*

17. Petitioner is a 19-year old citizen of Haiti born on July 21, 2007. On July 18, 2020, Zlatan was admitted to the United States on a B2 visitor's visa. A true and correct copy of the bond evidence filed by the U.S. Department of Homeland Security ("DHS") in the

Immigration Court, which includes Zlatan's immigration history, is collectively attached hereto as Exhibit 2. Zlatan has lived in the United States ever since his arrival in 2020. *Id.*

18. After arriving in the United States, Zlatan applied for Temporary Protected Status, as well as for asylum, withholding of removal, and protection under the Convention Against Torture. In addition, Zlatan's father, who is a lawful permanent resident and will soon be eligible to become a US citizen, has filed an I-130, Petition for Alien Relative with USCIS, which, if granted, will enable Zlatan to obtain a green card. A true and correct copy of the bond evidence submitted by Petitioner in the Immigration Court is collectively attached hereto as Exhibit 3.

19. After arriving in the United States, Zlatan attended school, learned English as a second language, and graduated from high school in 2025. Ex. 3 at 8, 17-18. He worked at different jobs including at Whole Foods and Dave's Hot Chicken in Boston. *Id.* at 12, 50-51. Prior to being arrested by ICE in January 2026, Zlatan had been living with his father at 104 Newbury Street #2, Brockton, MA 02301 where he hoped to return if granted release on bond. *Id* at 12-13.

20. While he has certain criminal charges, Zlatan has never been convicted of a crime. As he states in his declaration, "I am only a teenager and I'm still learning, but I try to be better every day." Ex. 3 at 83.

21. On January 19, 2026, ICE arrested Zlatan after he was briefly in MBTA police custody. He was wrongly charged with a crime that he did not commit and that was later dismissed. Ex. 3 at 83; Ex. 2. Zlatan has been in ICE custody since January 19, 2026.

22. On May 1, 2026, IJ Dubuc determined that Zlatan should be removed from the United States and returned to Haiti. She denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture. A true and correct copy of the

Order of the Immigration Judge dated May 1, 2026 is included in Exhibit 2 (at 7-10) hereto. With counsel, Zlatan filed a timely appeal with the Board of Immigration Appeals where his case remains pending.

***Zlatan's Bond Hearing***

23. On August 6, 2026, Zlatan received a bond hearing via video at the Chelmsford Immigration Court. In advance of the hearing, Zlatan, through *pro bono* counsel, submitted significant evidence of Zlatan's family and community ties in the United States, all of which was directly relevant to the mitigation of any risk of flight. Ex. 4.

24. Zlatan also submitted a letter from his father Ydrix Delmyr, who is a lawful permanent resident, as his sponsor. Mr. Delmyr is married to U.S. citizen. Zlatan had been living with his father at the time of his ICE arrest and Mr. Delmyr committed to supporting Zlatan in attending future immigration proceedings and ensuring that Zlatan has a stable home and fixed address to live at while his appeal and I-130 petition are pending. Ex. 3 at 12-13, 79.

25. Zlatan demonstrated his eligibility for relief from removal through his current appeal as well as the pending I-130 petition. *See* Ex. 3 at 21-23, 79.

26. In support of his request for bond, Zlatan submitted two declarations of his own (Ex. 3 at 58-59 & 83), a copy of his high school diploma from 2025 (*id.* at 8); his Employment Authorization Document based on Temporary Protected Status (*id.* at 10); his father's declaration, including a copy of his father's green card, proof of income and residence in Brockton, MA (*id.* at 12-15); a letter of support from Zlatan's former teacher Leona Gina Dalphond (a US citizen) describing Zlatan's commitment to learning and to his community (*id.* at 17-19); a letter from Zlatan's immigration attorney Richard Champagne confirming that he filed a timely appeal with the Board of Immigration Appeals and describing Zlatan's active

participation in his case (*id.* at 21-23); a letter from Zlatan's mother Christelle Lexis who resides in Florida describing that Zlatan is supported by a loving family (*id.* at 25); a letter from Zlatan's US citizen grandfather Gesner Delmy who lives in Medford, MA and with whom Zlatan stayed when he first arrived in the United States at age twelve (*id.* at 27); a letter from Zlatan's US citizen aunt Naslene Delmy who lives in Tewksbury, MA and who confirm that Zlatan is honest and responsible and that his family is "ready to support and guide him through whatever he needs in the next steps for his case (*id.* at 29);" a letter from Zlatan's US citizen aunt Angela Mathieu who described Zlatan's important role in their family and noted that Zlatan was at the hospital when her first child was born (*id.* at 31-32); a letter from Zlatan's US citizen uncle Will Delmy who was Zlatan's former legal guardian and states that he, along with the rest of the family, "will absolutely assist" in ensuring that Zlatan pursues obtaining legal immigration status (*id.* at 34-35); a letter from Zlatan's US citizen aunt Fabiola Torcel who lives in Brockton, MA and describes Zlatan as responsible, kind and thoughtful (*id.* at 37); a letter from US citizen family friend Sylvia Desir who knows Zlatan well and describes him as "attentive, patient, and naturally protective" (*id.* at 39); a letter for support from US citizen family friend Antonio Sypable who lives in Brockton, MA and states that Zlatan "comes from a family with strong values and integrity" (*id.* at 44-45); a letter of support from US citizen family friend Jessica Diejuste who states that Zlatan has a "reliable support network" (*id.* at 41-42); a letter of support from US citizen Ruth Sanon who has provided close support and guidance to Zlatan for job interviews his life after high school (*id.* at 48); a letter from Whole Foods confirming Zlatan's employment (*id.* at 50-51); Zlatan's most recent TPS receipt notice (*id.* at 61); Zlatan's I-94 record showing his legal entry into the United States (*id.* at 63); photos showing Zlatan with his family (*id.* at 65-70); the receipt for the I-130, Alien Relative Petition filed by Zlatan's father for

Zlatan ((*id.* at 79); and documents showing that Zlatan's criminal charges have been dismissed. *Id.* at 72, 74.

27. In opposition to Zlatan's request for bond, the Department of Homeland Security ("DHS") submitted its standard immigration enforcement record generated by DHS known as an I-213, which reports Zlatan's immigration history and narrated the events of Zlatan's arrest by ICE. Ex. 2. In addition, DHS submitted the Immigration Court's removal order, a rap sheet, criminal court record, and police report. *See* Ex. 2.

28. Notably, the IJ conducted the bond hearing without reviewing the evidence submitted by Zlatan's counsel. The IJ did not upload the bond evidence until the beginning of the hearing and she never paused or took a break to review the evidence prior to issuing her decision denying bond. *See* Declaration of Rhonda Tietjen attached hereto as Exhibit 4.

29. At the conclusion of the bond hearing, the IJ found that DHS had not met its burden of establishing dangerousness by clear and convincing evidence, but she did find that DHS had met its burden of proving flight risk by preponderance of the evidence and that no condition or amount of bond could ameliorate the flight risk. Ex. 1.[2] at 5.

30. IJ Frames' decision does not address why the IJ believed that Zlatan's extensive family and community ties, as well as pending immigration relief through his father, were not sufficient to mitigate any flight risk concerns. Ex. 1. Nor does it explain how there were no alternatives to detention that could ameliorate risk of flight and ensure Zlatan's future appearance at court and other immigration appointments.

[2] No written transcript of the bond hearing is available through the Immigration Court's ECAS system.

## JURISDICTION

31. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause), and 28 U.S.C. § 2201 (declaratory judgment).

32. Federal district courts have jurisdiction to order the release of any person who is held in custody in violation of the laws or Constitution of the United States. 28 U.S.C. § 2241(c).

33. In numerous cases, district court judges within the First Circuit have ordered the immediate release of detained noncitizens in cases where they have concluded that the noncitizen was denied bond because the Immigration Court failed to apply the correct legal standards. *See, e.g.*, *Loja Loja v. Moniz*, No. 26-11826-MJJ, Doc. No. 10 at 6 (D. Mass. April 28, 2026) (ordering immediate release); *Mijango Velasco v. Wesling*, No. 26-11355-LTS, Doc. No. 19 (D. Mass. April 24, 2026) (same); *Li v. Wesling*, 1:26-cv-11601-BEM, Doc. No. 10 (D. Mass April 9, 2026) (same); *Miti v. Moniz*, No. 26-11327-BEM, 2026 WL 884639 (D. Mass. Mar. 31, 2026) (same); *Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 (D.R.I. Dec. 3, 2025) (same); *I.G.S. v. Nessinger*, No. 25-cv-339-MRD-PAS, slip op. at 2-4 (D.R.I. Sept. 12, 2025) (same). *See also Higiro v. Nessinger*, No. 26-cv-00105-JJM-AEM, Doc. 8 at 9 (D.R.I. Mar. 13, 2026) (ordering a new bond hearing); *Costa v. McDonald*, No. 25-CV-13469-AK, 2026 WL 371198 (D. Mass. Feb. 10, 2026) (ordering a new bond hearing); *Gomes v. Hyde*, 804 F. Supp. 3d. 265, 278 (D. Mass. 2025) (citing *Hernandez-Lara*, 10 F.4th at 46; *Doe v. Tompkins*, 11 F. 4th 1, 2 (1st Cir. 2021); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021) (ordering a bond hearing).

34. Though federal courts generally lack jurisdiction to review discretionary judgments regarding the application of 8 U.S.C. § 1226(e), this Court may consider three types

of arguments regarding Petitioner's bond denial. *Miti*, 2026 WL 884639 at *4. *See also Demore v. Kim*, 538 U.S. 510, 518–22 (2003).

35. First, the Court may consider habeas petitions arguing that a detainee's due process rights were violated. *Miti*, 2026 WL 884639 at *4 ("The Court's task is therefore simply to ascertain whether the immigration court's discretion was exercised in a manner consistent with due process"); *Hernandez-Lara*, 10 F.4th at 28.

36. Second, the Court may review whether "the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *See Diaz Ortiz*, 384 F.Supp.3d at 144 (citation omitted).

37. Third, the Court may also consider whether the type of evidence presented at a petitioner's bond hearing "'could not – as a matter of law – have supported' the immigration judge's decision to deny bond." *See Diaz Ortiz*, 384 F.Supp.3d at 143 (quoting *Hechavarria*, 358 F. at 240); *see also Henry v. INS*, 74 F.3d 1, 4 (1st Cir. 1996) ("Adjudicatory tribunals can exceed grants of discretion – even ringing grants of broad, essentially standardless discretion . . . by attaching weight to a factor that does not appropriately bear on the decision.").

38. Here, Petitioner was denied a constitutionally-compliant bond hearing because the IJ failed to allocate the proper burdens of proof, the IJ's exercise of discretion was arbitrary and capricious, and the IJ failed to meaningfully consider less restrictive alternatives to detention. This "is precisely the type of constitutional claim that belongs in federal court." *Higiro v. Nessinger*, No. 26-cv-00105-JJM-AEM, Doc. 8 at 9 (D.R.I. Mar. 13, 2026).

39. Administrative exhaustion is not required in this case. The Court has consistently held that similarly situated petitioners are not required to exhaust administrative remedies when they are currently detained by Respondents and are subject to irreparable harm. *See Costa v.*

*McDonald,* No. 25-CV-13469-AK, 2026 WL 371198 at *3 (D. Mass. Feb. 10, 2026) (quoting *Gomes v. Hyde*, 804 F.Supp.3d 265, 272 (D. Mass. 2025)); *Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 3-4.

40. Indeed, "this case is governed by the 'more permissive' common-law exhaustion standard," where the Court "may find exhaustion to be unnecessary where" (1) "'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim,'" *Garcia*, 2025 WL 3466312, at *6 (quoting *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997)); (2) when the "legal question is fit for resolution and delay means hardship," *id.* (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000)); and/or (3) "if a substantial doubt exists about whether the agency is empowered to grant meaningful redress," *id.* (quoting *Portela-Gonzalez*, 109 F.3d at 77). *See also Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 4.

41. Zlatan is subject to all three of these conditions.

42. Zlatan is being irreparably harmed by his ongoing unlawful detention without a constitutionally-compliant bond hearing. *See Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 4-5; *Romero v. Hyde*, No. 25-CV-11631, 2025 WL 2403827, at *6–8 (D. Mass. Aug. 19, 2025) (no exhaustion required because "[o]bviously, the loss of liberty is a . . . severe form of irreparable injury" (internal quotation marks omitted)); *Flores Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (declining to require administrative exhaustion, including because "[a] loss of liberty may be an irreparable harm"); *cf. Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (noting "'[e]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest'") (citing *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986)).

43. Further, requiring Zlatan to await a decision from the BIA on the IJ's bond order would result in further delay and significant hardship. As multiple courts within this Circuit have noted, "the average processing time for bond appeals exceeded 200 days in 2024," indicating Zlatan would "likely face several additional months of detention while awaiting a BIA decision." *Garcia v. Hyde*, 2025 WL 3466312, at *6 (waiving exhaustion because of delay associated with BIA appeal); *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 25–26 (D. Mass. 2025) (holding 200 day average BIA processing time would constitute "a prolonged loss of liberty [that] would, in these circumstances, constitute irreparable harm"); *Gomez v. Hyde*, 804 F. Supp. 3d 265, 272–73 (D. Mass. 2025) (same); *Casun v. Hyde*, No. 25-CV-427, 2025 WL 2806769, at *3 (D.R.I. Oct. 2, 2025) (same).

44. Last, Zlatan need not exhaust administrative remedies because the Immigration Court lacks jurisdiction to adjudicate the constitutional claims raised in this Petition and any attempt to raise such claims would be futile. *See Mijango Velasco*, No. 26-11355-LTS, Doc. No. 19 at 7 n.3; *Flores-Powell*, 677 F. Supp. 2d at 463 (holding "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions and its prior interpretation" of the relevant statute); *Figueroa v. McDonald*, 680 F. Supp. 3d 18, 22 (D. Mass. 2018) (holding exhaustion not required where petitioner challenged the constitutionality of a bond hearing, which "'falls outside the scope of § 1226(e)' because it is not a matter of the IJ's discretionary judgment") (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)); *Matter of Cruz de Ortiz*, 25 I&N Dec. 601, 605 (BIA 2011) ("[N]either we nor the Immigration Judges have authority to rule on the constitutionality of the statutes we administer."). As such, this Court has jurisdiction to review this Petition.

## ARGUMENT

### A. Zlatan Should Be Released Because He Did Not Receive A Bond Hearing That Complied With Due Process.

#### 1. The IJ did not properly allocate burdens of proof, and the evidence was insufficient as a matter of law to meet the government's burden.

45. In a bond hearing, due process requires that the government prove either by clear and convincing evidence that Petitioner poses a danger to the community or by a preponderance of the evidence that Petitioner poses a flight risk. *Hernandez-Lara*, 10 F.4th at 41; *see also Brito v. Garland*, 22 F.4th 240, 246 (1st Cir. 2021); *Doe v. Tompkins*, 11 F. 4th 1, 2 (1st Cir. 2021). The application of legal standards requires more than lip service; the legal standard must be meaningfully applied. *Akinsanya v. Garland,* 125 F.4th 287, 297 (1st Cir. 2025) ("Merely stating the proper standard does not discharge the obligation to correctly apply the standard.").

46. The District Court has authority to order release where the Petitioner has demonstrated that the IJ has failed to properly allocate the burden of proof, either by pointing to the language of the IJ's order, or by showing that the evidence presented at a bond hearing itself "'could not – as a matter of law – have supported' the immigration judge's decision to deny bond." *Diaz Ortiz*, 384 F.Supp.3d at 143 (quoting *Hechavarria*, 358 F. at 240); *Picado v. Hyde*, No. 26-CV-065-JJM-PAS, 2026 WL 352691, at *1 (D.R.I. Feb. 9, 2026); *Garcia*, 2025 WL 3466312, at *7 (citing *Hechavarria v. Whitaker* 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)); *see also Rosa v. Garland*, 114 F.4th 1, 14-15 (1st Cir. 2024) (finding the Court has jurisdiction to review immigration agency decisions concerning whether it followed binding precedent).

47. Here, the government did not meet this burden, and the IJ improperly denied bond despite the government's failure to demonstrate by a preponderance of the evidence that Respondent is a flight risk so high that no amount of bond or alternative to detention – such as a GPS monitor -- could mitigate his risk of flight. As noted above, the IJ did not take any time to

review the extensive evidence submitted by Zaltan before issing her bond denial. *See* Ex. 4. *See Mijango Velasco,* No. 26-11355-LTS, Doc. No.19 at 6 ("the IJ disregarded the fundamental principles and burdens required by the Constitution and the law governing bond hearings within the First Circuit by relying exclusively on an uncorroborated police report without supplying even the briefest of explanations to show how (or even whether) she had evaluated the fulsome record amassed by Mijango Velasco to counter the government's dangerousness argument and support his request for release").

48. The IJ's written order is plainly deficient on its face. The order simply states that bond was denied because "[t]he respondent is a flight risk by a preponderance of the evidence and there is no bond amount or alternative to detention that would ameliorate his risk of flight." Ex. 1. The written order includes no legal reasoning, application of the facts, or indication that the IJ considered alternatives to detention. *Cf. Mijango-Velasco*, No. 26-11355-LTS, Doc. No.19 at 2.

49. The decision makes clear that the IJ did not properly allocate the burdens of proof and improperly relied on evidence that cannot support a denial of bond based on flight risk. The only evidence submitted by DHS that could arguably weigh on flight risk is the removal order issued by the Immigration Court on May 1, 2026. However, Zlatan's immigration counsel has timely appealed the decision to the BIA. Ex. 3 at 21-23. Further, Zlatan's father has applied for Zlatan to be able to obtain a green card through Zlatan's father's legal status. Ex. 3 at 12-13 & 79. Zlatan has every interest to remain with his family and cooperate with his immigration process so that he may obtain legal status and remain in the United States.

50. Nothing else submitted by DHS supports the IJ's conclusion that Zlatan is a flight risk by a preponderance of the evidence. The I-213 is insufficient as a matter of law to meet

DHS's burden of demonstrating flight risk by a preponderance of the evidence that no amount of bond or condition could ameliorate. *Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 6 ("Petitioner has a fundamental right to due process, and reliance on an 1- 213–without corroborating the facts it contains and in the face of contrary testimony from both Petitioner and his wife–does not satisfy the evidentiary burden required to deny bond.")

51. Additionally, Zlatan's evidentiary submission (Ex. 3) did more than enough to show that any risk of flight is minimal, yet the IJ did not take the time to even read it. Ex. 4. With respect to flight risk, "because the burden is on the government, the noncitizen need not prove a negative (by showing, for example, that he or she has not fled prosecution or failed to appear at court) but is instead faced with the more straightforward task of marshalling evidence readily available to her so as to rebut the government's evidence." *Hernandez-Lara*, 10 F.4th at 40 (quoting *Addington v. Texas*, 441 U.S. 418 (1979)). Zlatan fulfilled this responsibility.

52. Indeed, Zlatan submitted evidence addressing numerous factors laid out by the BIA in *Matter of Guerra*. *See* 24 I&N Dec. at 40. As noted above, Zlatan has no criminal convictions. The additional evidence Petitioner submitted addressed multiple factors enumerated in *Matter of Guerra*, including demonstrating a fixed address, employment history, availability of immigration relief, length of residence and community ties. 24 I&N Dec. 37, 40 (BIA 2006). *See* Ex. 4.

53. The IJ found that DHS had met its burden despite that it failed to rebut Zlatan's extensive supporting evidence. Judges within this District have repeatedly held that "[a]n IJ 'may not simply ignore substantial testimonial and documentary proof'" during a bond hearing. *Loja Loja*, No. 26-11826-MJJ, Doc. No. 10 at 6 (citing *Garcia*, 2025 WL 3466312 at *1); *Mijango-Velasco*, No. 26-11355-LTS, Doc. No. 19 at 6. *See Miri v. Bondi*, No. 5:26-CV-00698-MEMF-

MAR, 2026 WL 622302 at *7-9 (C.D. Cal. Mar. 5, 2026) (finding an IJ errs where they do not conduct an individualized balancing test according to the factors articulated in *Matter of Guerra*). In *Mijango-Velasco*, Judge Sorokin found that an IJ erred in neglecting to acknowledge the positive equities presented by the Petitioner on bond. *Mijango Velasco*, No. 26-11355-LTS, Doc. No. 19 at 7 n.3

54. At bottom, the evidence submitted by DHS against Zlatan was insufficient as a matter of law to support the IJ's conclusion, which violated Zlatan's due process rights.

**2. The IJ's exercise of discretion in denying bond was so arbitrary and capricious as to violate fundamental tenets of due process.**

55. The District Court may review whether "the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *See Diaz Ortiz*, 384 F.Supp.3d at 144 (citation omitted); *see also Henry v. INS*, 74 F.3d 1, 4 (1st Cir. 1996) ("Adjudicatory tribunals can exceed grants of discretion – even ringing grants of broad, essentially standardless discretion . . . by attaching weight to a factor that does not appropriately bear on the decision."). A constitutionally-compliant bond hearing requires that the considerations relied upon by the adjudicator have a clear "evidentiary connection" to the determining criteria of danger to the community or flight risk. *Mendez Trigueros v. Guadian*, No. 1:26-cv-205, Doc. 13, at 5, 6-7 (E.D. Va. Feb. 18, 2026) ("the considerations upon which it was determined that Petitioner constitutes a flight risk were so lacking in probative value as to that issue that their use in determining flight risk failed to provide the Petitioner with constitutionally sufficient due process").

56. As stated above, the BIA has recognized a non-exhaustive list of factors relevant to a bond determination, including whether the noncitizen has a fixed address in the U.S., length of residence and family ties in the United States, employment history, record of appearance in

court, and criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). The IJ must consider all relevant factors in making a determination whether to grant bond; placing undue weight on one factor while failing to take others into account renders her decision arbitrary and violates due process. *See Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 (D.R.I. Dec. 3, 2025).

57. The IJ's decision to deny bond based on unsupported speculation as to whether Petitioner would appear in court to pursue his immigration relief was so lacking in evidentiary connection to current flight risk that it rendered the bond determination arbitrary and capricious, and thus violated due process.

58. As stated *supra*, Zlatan submitted evidence addressing numerous factors laid out in *Guerra*, namely a fixed address, stable employment history, lack of criminal convictions, eligibility for immigration relief, lengthy residence in the United States, and strong and extensive family and community ties. Ex. 3.

59. The IJ's conclusion – and her bare written decision -- that DHS had satisfied its burden of proving flight risk by a preponderance of the evidence has no legal or factual basis. It is legal error for the IJ to "fail to mention highly probative or potentially dispositive evidence," even if the IJ's decision contains a "catchall phrase" asserting that they reviewed the entirety of the evidence, which the IJ did not even assert here. *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (citing *Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011)). "While the IJ 'need not discuss *ad nauseam* every piece of evidence,' they 'may not simply ignore substantial testimonial and documentary proof.'" *Garcia v. Hyde,* 2025 WL 3466312, at *1 (citing *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023). *See Loja Loja*, No. 26-11826-MJJ, Doc. No.

10 at 6 (citing *Garcia*, 2025 WL 3466312 at *1); *Mijango-Velasco*, No. 26-11355-LTS, Doc. No. 19 at 6; *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302 at *7-9 (C.D. Cal. Mar. 5, 2026). *See also Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007)). The IJ must give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[ ] [their] reasoning." *Garcia v. Hyde,* 2025 WL 3466312, at *1 (quoting *Pan*, 489 F.3d at 87).

60. Here, there is no suggestion in the written decision (Ex. 1), or the IJ's oral decision (Ex. 2), that the IJ gave any consideration to the evidence in favor of Zlatan. The IJ did not take time to review Zaltan's evidence before finding that DHS had satisfied its burden as to flight risk. Such cursory decisionmaking can only be described as so arbitrary that it violated Zlatan's due process rights. *See Diaz Ortiz*, 384 F.Supp.3d at 144; *see also Mendez Trigueros v. Guardian*, 1:26-cv-00205-AJT-WBP, Doc. 13 (E.D. Va. Feb. 18, 2026).

**3. The IJ failed to consider alternatives to detention in her analysis of flight risk.**

61. An IJ's failure to consider alternative conditions of release in a bond determination is a violation of an individual's due process rights. *See Mijango-Velasco*, No. 26-11355-LTS, Doc. No. 19 at 5-6; *Costa,* No. 25-CV-13469-AK, 2026 WL 371198; *Brito v. Barr*, 415 F. Supp. 3d 258, 267-71 (D. Mass. 2019), aff'd in part, vacated in part, 22 F.4th 240 (1st Cir. 2021); *Reid v. Donelan,* 390 F. Supp. 3d 201, 225 (D. Mass. 2019); *see also Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017) ("Is consideration of . . . possible alternative release conditions [] necessary to ensure that the conditions of their release will be reasonably related to the governmental interest in ensuring their appearance at future hearings? We conclude that the answer is yes.").

62. Courts recognize that alternatives to detention, such as GPS monitoring or check-ins, are proven to be highly effective in mitigating flight risk for noncitizens in immigration

proceedings. *See, e.g., Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (recognizing that Intensive Supervision Appearance Program (ISAP) "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"); *see also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 1233883, at *12 (E.D. Cal. Apr. 29, 2025). Under BIA precedent, when an IJ finds an individual does not pose a danger, they should decide the amount of bond necessary to ensure the noncitizen's presence at future hearings and to ensure the noncitizen will report for removal if ordered to do so. *Matter of Urena*, 25 I&N Dec. 140 (BIA 2009).

63. Here, with no explanation, the IJ stated in her decision that "[t]he respondent is a flight risk by a preponderance of the evidence and there is no bond amount or alternative to detention that would ameliorate his risk of flight." Ex. 1. *Hechavarria*, 358 F. Supp. 3d at 242 (holding bond hearing fell short of due process requirements where the IJ did not even say "one word about any alternative to detention" over the course of the hearing). This omission violated Zlatan's due process rights. *See Mijango-Velasco*, No. 26-11355-LTS, Doc. No. 19 at 5-6; *Costa,* No. 25-CV-13469-AK, 2026 WL 371198; *Brito*, 415 F. Supp. 3d 258, 267-71, *aff'd in part, vacated in part*, 22 F.4th 240 (1st Cir. 2021); *Reid v. Donelan,* 390 F. Supp. 3d 201, 225 (D. Mass. 2019).

64. In making the decision to continue detention based on the minimal amount of flight risk Zlatan may pose, the IJ falsely equated bond to a binary choice, where the individual must be either freely released or held at length throughout the pendency of removal proceedings. But as the First Circuit and the Supreme Court have recognized, "'the choice . . . is not between imprisonment and the [noncitizen] "living at large"' in this country but 'between imprisonment and supervision under release conditions that may not be violated.'" *Hernandez-Lara*, 10 F.4th at

29, quoting *Zadvydas*, 533 U.S. at 696.

65. Imposing continued civil detention, which may be prolonged during Zlatan's removal proceedings, while failing to consider less restrictive alternatives to detention, violates Zlatan's constitutional rights. Zlatan is currently detained at Plymouth County Correctional Facility, where he just turned 19 years old. He is subject to criminal conditions of confinement, despite never having been charged or convicted of a crime. *See Hernandez-Lara*, 10 F.4th at 28, quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2nd Cir. 2020) ("[Petitioner] was not 'detained'; he was, in fact, incarcerated under conditions indistinguishable from those imposed on criminal defendants sent to prison following convictions for violent felonies and other serious crimes."). At the very least, if a less restrictive alternative to detention is available, "due process requires the Government to at least address why those alternatives might be inadequate." *Costa,* No. 25-CV-13469-AK, 2026 WL 371198 at *3. The IJ's failure to consider alternatives to detention violated Zlatan's due process rights, and Zlatan is entitled to relief.

## CLAIM FOR RELIEF

### Count One

### Violation of the Due Process Clause of the Fifth Amendment of the United States Constitution

66. Petitioner realleges and incorporates by reference each allegation contained above.

67. DHS's evidence was insufficient as a matter of law to meet its burden to prove flight risk by a preponderance of the evidence, and therefore the IJ's decision to deny bond did not follow binding precedent by the First Circuit.

68. The immigration judge's decision to deny bond based on the evidence presented by DHS was so lacking in evidentiary connection to current flight risk that it rendered the bond

determination arbitrary and capricious and thus violated due process.

69. The IJ's failure to consider alternatives to detention in making her decision to deny bond violated Zlatan's due process rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

(1) Assume jurisdiction over the matter;

(2) Order Respondents to show cause why the Writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

(3) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution;

(4) Grant a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from custody, or in the alternative, release him on alternatives to detention pursuant to this Court's equitable powers;

(5) Order Respondents to return Petitioner's property upon release from immigration custody;

(6) Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

(7) Grant such further relief as this Court deems just and proper.

Dated: August 19, 2026

Respectfully submitted,

*/s/ Irene C. Freidel*
Irene C. Freidel
BBO# 559051
PAIR Project
98 N. Washington Street, Suite 106
Boston, MA 02114
(617) 947-6349; ifreidel@pairproject.org

*Pro bono counsel for Petitioner*