**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ZLATAN WAD ERNESTO DELMYR,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, Superintendent of Plymouth County Correctional Facility, DAVID T. WESLING, Acting Boston Field Office Director, U.S. Immigration and Customs Enforcement, DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement, MARKWAYNE MULLIN, U.S. Secretary of Homeland Security, and TODD BLANCHE, Acting U.S. Attorney General,<br><br>Respondents. | Civil Action No. 1:26-cv-13833-AK |

**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

Before the Court is Petitioner Zlatan Wad Ernesto Delmyr's ("Delmyr" or "Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). [Dkt. 1]. Petitioner challenges his detention by Immigration and Customs Enforcement ("ICE"), claiming, inter alia, that the bond hearing afforded to him was "in violation of his due process rights and the legal standards set forth by the First Circuit." [Dkt. 1 ¶ 6]. For the following reasons, the Petition [Dkt. 1] is **GRANTED**.

## I. BACKGROUND

Petitioner is a 19-year-old native and citizen of Haiti who lawfully entered the United States in 2020, at age 12, on a B-2 visitor's visa. [Dkt. 1 ¶ 2]. Petitioner applied for Temporary

Protected Status ("TPS"), asylum, withholding of removal, and protection under the Convention Against Torture. [Id.]. Petitioner's father is a lawful permanent resident, eligible to become a United States citizen, and has submitted an I-130 petition so that Petitioner can obtain a green card. [Id.]. Petitioner has several family members in the United States and no immediate family members in Haiti. [Id. ¶ 3].

On January 18, 2026, Petitioner was arrested by MBTA police and charged with attempted unarmed robbery. [Dkt. 1-2 at 27-34]. On January 19, 2026, after Petitioner's release from police custody, ICE arrested Petitioner and held him at the Plymouth County Correctional Facility in Plymouth, Massachusetts. [Dkt. 1 ¶¶ 4, 21]. On May 1, 2026, the Chelmsford Immigration Court denied Petitioner's applications for relief and ordered him removed to Haiti. [Id. ¶¶ 5, 22]. Petitioner's appeal of that decision remains pending with the Board of Immigration Appeals ("BIA"). [Id.]. On June 25, 2026, the criminal charges against Petitioner were dismissed. [Dkt. 1-2 at 27-29]. Petitioner has previous criminal charges of shoplifting and receiving a stolen motor vehicle that were dismissed and has no criminal convictions. [Dkt. 1-2 at 12-17]. On August 6, 2026, an Immigration Judge ("IJ") denied bond, finding Petitioner a flight risk by a preponderance of evidence. [Dkt. 1-1 at 2].

Petitioner claims the IJ's denial of bond based on flight risk was in violation of his due process rights and the legal standards set forth by the First Circuit. Petitioner claims, inter alia, the IJ failed to allocate the proper burdens of proof, the IJ's exercise of discretion was arbitrary and capricious, and the IJ failed to meaningfully consider less restrictive alternatives to detention. [Dkt. 1]. Respondents oppose the Petition, contending the Court lacks jurisdiction to review the IJ's determination, Petitioner should have exhausted appeal before the BIA, and that evidence sufficiently supports the IJ's finding of flight risk. [Dkt. 8].

## II. DISCUSSION

### A. Subject-Matter Jurisdiction

Respondents argue that the Court lacks jurisdiction pursuant to 8 U.S.C. § 1226(e) to review the IJ's decision denying bond under 8 U.S.C. § 1226(a). Respondents also argue that Petitioner asks this Court to reweigh evidence, which is beyond the scope of this Court's jurisdiction. Petitioner, on the other hand, contends that the IJ misapplied the law and relied on insufficient evidence—as a matter of law—to find him to be a flight risk, thus violating his due process rights. As discussed below, Petitioner's challenge is directed at the legality and constitutionality of the IJ's process, and review is, therefore, not barred by Section 1226(e).

As this Court held in Reyes Vargas, and as other judges of this Court have held, the Court can assess "whether the IJ adopted a constitutionally and legally adequate process in affording a bond hearing to Petitioner." Reyes Vargas v. Warden, Plymouth Cnty. Corr. Facility, No. 26-cv-11740-AK, 2026 WL 1453510, at *3 (D. Mass. May 22, 2026); see also Miti v. Moniz, 827 F. Supp. 3d 206, 211 (D. Mass. 2026) ("District courts retain habeas jurisdiction to ensure that immigration bond hearings are conducted within constitutional bounds"); Dos Reis v. Vitello, No. 25-cv-10497-RGS, 2025 WL 1043434, at *2 (D. Mass. Apr. 8, 2025) ("[A] court may intervene where an immigration bail determination is *ultra vires* or facially unconstitutional"); Massingue v. Streeter, No. 3:19-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020) (district courts can assess whether an IJ's bond hearing complied with constitutionally mandated standards).

Here, Petitioner contends that the IJ did not properly allocate the burdens of proof and improperly relied on evidence that cannot support a denial of bond based on flight risk. [Dkt. 1 ¶¶ 45-54]. Petitioner contends that the IJ's exercise of discretion in denying bond was so

arbitrary and capricious as to violate fundamental tenets of due process. [Id. ¶¶ 55-60]. Finally, Petitioner argues that the IJ failed to consider Petitioner's evidentiary submission concerning his extensive family and community ties and his pending immigration relief, and failed to acknowledge alternatives to detention. [Id. ¶¶ 61-65]. This Court's review is, therefore, not barred by 8 U.S.C. § 1226(e).

**B. Exhaustion**

Petitioner need not exhaust appeal before the BIA. Where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim," common-law exhaustion may be unnecessary. Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997). "[T]he loss of liberty is [certainly] a . . . severe form of irreparable injury" incurred by Petitioner. Ferrara v. United States, 370 F. Supp. 2d 351, 360 (D. Mass. 2005). Common-law exhaustion is also unnecessary in circumstances where substantial doubts exist as to the agency's institutional competence or power to grant meaningful redress. Reyes Vargas, 2026 WL 1453510, at *4.

Here, like Reyes Vargas, Petitioner's liberty interests are at stake and his detention, being discretionary under 8 U.S.C. § 1226(a), is without any specific length. Petitioner also challenges the legality of his detention, and the IJ's bond hearing for violation of his due process rights—a constitutional challenge that the BIA lacks authority to meaningfully adjudicate. See Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 238 (W.D.N.Y. 2019) ("[T]he BIA does not have jurisdiction to adjudicate constitutional issues"). Therefore, "[a]llowing Petitioner's indefinite detention . . . especially when the legality of Petitioner's detention and process to determine his custody is under challenge, would be a significant harm." Reyes Vargas, 2026 WL 1453510, at *5. Accordingly, Petitioner need not resort to the BIA's appellate review.

### C. Sufficiency of Bond Hearing

#### 1. Standard of Review

The Court's authority to review the IJ's custody determination is "limited." Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019). The Court cannot reweigh evidence or review the IJ's discretionary judgments. Diaz-Calderon v. Barr, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020) (quoting Arellano v. Sessions, No. 6:18-CV-06625, 2019 WL 3387210, at *7 (W.D.N.Y. July 26, 2019)) ("[A] district court sitting in habeas review . . . has no authority to encroach upon an IJ's discretionary weighing of the evidence."); see also Pensamiento v. McDonald, 315 F. Supp. 3d 684, 688 (D. Mass. 2018) ("Congress has eliminated judicial review of discretionary custody determinations."). The Court must also be "mindful of [its] obligation to afford . . . a degree of deference to the [factfinder's] determinations." United States v. Tortora, 922 F.2d 880, 882 (1st Cir. 1990). Within these limitations, the Court can, however, assess whether an immigration bond hearing comported with due process requirements. To review the IJ's custody determination for constitutional adequacy, the Court considers whether the IJ applied the correct legal standard. Petitioner may generally show the IJ's failure to apply a correct legal standard by either (1) "point[ing] to the language of the immigration judge's opinion" or (2) "demonstrat[ing] that 'the evidence itself could not—as a matter of law—have supported' the immigration judge's decision to deny bond." Diaz Ortiz, 384 F. Supp. 3d at 143 (quoting Hechavarria, 358 F. Supp. 3d at 240). For the former, "[m]erely stating the proper standard does not discharge the obligation to correctly apply the standard." Akinsanya v. Garland, 125 F.4th 287, 297 (1st Cir. 2025). For the latter, Petitioner must show that "under the circumstances, no reasonable immigration judge could have come to" the conclusion that Petitioner was a flight risk. Miti, 827 F. Supp. 3d at 217. Here, Petitioner points to the IJ's oral decision as well as the

evidentiary record to claim the IJ failed to correctly apply the legal standards in finding Petitioner a flight risk.

At an immigration bond hearing in this circuit, the government bears the burden of establishing that the noncitizen is either (1) dangerous by clear and convincing evidence or (2) a risk of flight by a preponderance of the evidence. Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021). Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)[1] provides the factors that an IJ may consider in determining whether a non-citizen poses a risk of flight for the purposes of custody determination. While an IJ has "broad discretion in deciding the factors," the IJ "may" consider "any or all of the following":

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Id. at 40. In considering these factors, an IJ's decision should be "reasonable." Id.

An IJ may also "consider any evidence in the record . . . when assessing flight risk, provided that such evidence is 'probative and specific.'" Garcia v. Hyde, 817 F. Supp. 3d 112, 127 (D.R.I. 2025) (quoting Matter of Guerra, 24 I. & N. Dec. at 40-41). While an IJ's determination of flight risk involves discretion, it is still a legal standard that is applied to assess custody determinations. The determination of flight risk requires an IJ to consider multiple

[1] In Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021), the First Circuit overruled Matter of Guerra, to the extent it placed burden on the noncitizen, as opposed to the government, to prove that he or she is not a flight risk or a danger to the community at the bond hearing. However, Matter of Guerra continues to guide the IJ's inquiry into determination of flight risk and danger to the community during a custody determination hearing.

factors as set out in Matter of Guerra, and thus the IJ's application of flight risk to Petitioner's facts is reviewable. See Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) (quoting Wilkinson v. Garland, 601 U.S. 209, 221 (2024)) ("[A]pplication of the 'dangerousness' standard . . . [is] a legal standard so long as federal courts 'can assess whether an IJ correctly applied the statutory standard to a given set of facts.'"). The Court accordingly reviews the IJ's order to determine if it correctly applied the legal standards.

**2. Petitioner's Bond Hearing Was Legally Deficient**

In light of the standards set out above, the Court finds the bond hearing was legally deficient. The Court reviewed the audio recording of the bond hearing [Dkt. 10], the evidentiary record [Dkt. 1-2, 1-3, and 1-4], the IJ's oral decision, and written order [Dkt. 1-1] to assess whether the IJ's decision reflects an application of the correct standard of law and whether Respondents' evidence could—as a matter of law—establish, by the preponderance of the evidence, that Petitioner was a flight risk.

At the bond hearing, the Department of Homeland Security ("DHS") submitted its standard I-213 immigration enforcement record, which reports Petitioner's immigration history and describes the events of his arrest by ICE, containing the statement "DELMYR resists with intention to flee from being arrested." [Dkt. 1-2]. In addition, DHS submitted the Immigration Court's removal order, Petitioner's criminal background, docket sheet, and recent police report. [Id.]. Petitioner submitted significant evidence of his family and community ties in the United States, including several letters of support from family and the community, two declarations by Petitioner, his high school diploma, his employment authorization document based upon TPS, and his father's declaration with proof of a green card and residence. [See Dkt. 1 ¶¶ 23-26, Dkt. 1-3]. Petitioner argues that the IJ conducted the bond hearing without reviewing the evidence

submitted by Petitioner. [Dkt. 1 ¶ 28]. Petitioner submitted a declaration from his *pro bono* bond hearing counsel stating that the IJ did not upload the bond evidence until the beginning of the hearing and that the IJ never paused or took a break to review the evidence prior to issuing her decision denying bond. [Dkt. 1-4 ¶ 4]. Petitioner's counsel states that, "based on my observations during the bond hearing, [the IJ] did not review, and could not have reviewed, the lengthy evidence submitted by [Petitioner] in support of his bond request." [Id. ¶ 6]. The Court's review of the audio recording of the hearing confirms that Petitioner's evidentiary submission was not uploaded until the hearing began and was only considered during the hearing, which lasted approximately thirty minutes. [Dkt. 10].

In her oral decision, the IJ considered Petitioner's recent criminal history, the I-213 report, his manner of entry, and visa overstay. [Dkt. 10]. The IJ acknowledged the pending I-130 application for relief but noted it is a discretionary determination and uncertain. [Id. at 25:00]. Although the IJ stated she considered Petitioner's family and community connections, including his extensive family in the United States and family members with citizenship status, she denied bond. [Id.]. The IJ did not discuss alternatives to detention and simply found that no bond amount or alternatives to detention would ameliorate the flight risk without any further analysis. [Id.; Dkt. 1-1].

This is insufficient under due process. The record indicates an inadequate consideration of Petitioner's supporting evidence and lack of analysis in the assessment of flight risk. Other sessions in this District have held that "[a]n IJ 'may not simply ignore substantial testimonial and documentary proof'" during a bond hearing. Loja Loja v. Moniz, No. 26-cv-11826-MJJ, Dkt. No. 10, at 3 (D. Mass. Apr. 28, 2026) (quoting Garcia, 817 F. Supp. 3d at 120); Mijango Velasco v. Wesling, No. 26-cv-11355-LTS, Dkt. No. 19 (D. Mass. Apr. 24, 2026) (finding that an IJ erred

in neglecting to acknowledge the positive equities presented by Petitioner on bond and ordering immediate release); see Miri v. Bondi, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *7–9 (C.D. Cal. Mar. 5, 2026) (finding an IJ errs where they do not conduct an individualized balancing test according to the factors articulated in Matter of Guerra). The IJ's reliance on the uncorroborated I-213 report and her treatment of Petitioner's pathway to relief as speculative do not support the finding of flight risk as a matter of law. The IJ's decision did not explain how those considerations bore on her determination of flight risk and the IJ failed to properly apply the Guerra factors to Petitioner's case. The IJ did not address in her oral decision or written order why she believed that Petitioner's extensive family and community ties, as well as pending immigration relief through his father, were not sufficient to mitigate any flight risk concerns. [Dkt. 1-1]. Nor did the IJ explain why there were no alternatives to detention that could ameliorate risk of flight and ensure Petitioner's future appearance at court and other immigration appointments. [Id.]. The written order includes no legal reasoning, application of the facts, or indication that the IJ considered alternatives to detention. [Id.].

After careful consideration, the Court concludes that the bond hearing held in this case was deficient and thus did not comport with the requirements of due process. The IJ relied on insufficient evidence and failed to evaluate Petitioner's significant evidence supporting his request for release. See, e.g., Mijango Velasco, No. 26-cv-11355-LTS, Dkt. No.19 (ordering immediate release where "the IJ disregarded the fundamental principles and burdens required by the Constitution and the law governing bond hearings within the First Circuit by relying exclusively on an uncorroborated police report without supplying even the briefest of explanations to show how (or even whether) she had evaluated the fulsome record amassed by [Petitioner] to counter the government's dangerousness argument and support his request for

release"). The IJ failed to explain why no alternatives to detention would ameliorate the flight risk of Petitioner, who has extensive family and community ties and pending pathways to relief. See Costa v. McDonald, No. 25-cv-13469-AK, 2026 WL 371198, at *2–3 (D. Mass. Feb. 10, 2026) (holding that, by failing to consider alternatives to detention, "the Government failed to provide Petitioner with constitutionally sufficient procedure"). Accordingly, the failure to provide a constitutionally sufficient procedure and to consider alternatives to detention renders the bond hearing legally deficient and a violation of due process.

## III. REMEDY

Where a petitioner does not pose a danger to the community and is unlawfully determined to be a flight risk, courts have regularly ordered immediate release. See, e.g., Miti, 827 F. Supp. 3d at 220; Garcia, 817 F. Supp. 3d at 131; Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1082 (W.D. Wash. 2026); Miri, 2026 WL 622302, at *11. Here, the IJ did not find Petitioner to be a danger to the community but instead found Petitioner a flight risk on insufficient evidence and did not consider alternatives to detention. Under the circumstances, there is no basis for Petitioner's continued detention, and thus immediate release is an appropriate remedy.

## IV. CONCLUSION

For the foregoing reasons, Zlatan Wad Ernesto Delmyr's Petition [Dkt. 1] is **GRANTED**. Respondents are **ORDERED** to release Petitioner immediately.

**SO ORDERED.**

Dated: October 8, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge